# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

NICHOLAS HOLLIS,                                                                                    PLAINTIFF
ADC #114535

v.                                              5:19-cv-00265-JM-JJV

ARKANSAS BOARD OF CORRECTION, *et al.*                                                  DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.   INTRODUCTION

Nicholas Hollis ("Plaintiff") is a prisoner in the Tucker Unit of the Arkansas Division of Correction ("ADC"). He has filed a *pro se* Amended Complaint alleging Defendants violated the Civil Rights Act, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act by failing to provide him with adequate medical care for spinal stenosis and peripheral neuropathy and refusing to give him a wheelchair, walker, and other accommodations for those issues. (Doc. No. 8.) Plaintiff brings these claims against Dr. Horan, Health Services Administrator Chisom, Director of Nurses Moore, Correct Care Solutions, ADC Deputy Director Griffin, Warden Page, Captain Clark, and Sergeant McCoy.[1] (*Id.*)

Defendants have filed two Motions for Summary Judgment arguing all claims against them should be dismissed without prejudice because Plaintiff did not properly exhaust his administrative remedies before filing this lawsuit. (Doc. Nos. 47, 48, 49, 76, 77, 78, 79.) Plaintiff has

---

[1] All other claims raised in the Amended Complaint were dismissed without prejudice during screening mandated by 28 U.S.C. § 1915A. (Docs. Nos. 10, 25.)

responded to both Motions.[2] (Doc. Nos. 67, 68, 69, 85, 86, 87, 88.)  After carefully reviewing the pleadings and for the following reasons, I conclude the Motions for Summary Judgment should be GRANTED and Plaintiff's claims against all remaining Defendants should be DISMISSED without prejudice.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material

---

[2] Plaintiff says the Motions for Summary Judgment are premature because he has not completed discovery. (Doc. Nos. 69, 87.)  But, Plaintiff has not explained what additional discovery he needs to properly respond to Defendants' exhaustion argument.  To the contrary, Plaintiff and Defendants have provided copies of the relevant exhaustion documents with their summary judgment pleadings.  (Doc. Nos. 21, 48, 76, 77.)  Plaintiff's desire to conduct discovery on the merits of his claim is irrelevant to the pending Motions.

will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. ANALYSIS

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018). Exhaustion under the PLRA is mandatory and is required for all actions "brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Woodford v. Ngo,* 548 U.S. 81, 85 (2006) ("exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983"). Thus, the exhaustion requirement applies to Plaintiff's ADA and RA claims, as well as his § 1983 claim.

To properly exhaust administrative remedies, prisoners must "complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones,* 549 U.S. at 218. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion." *Muhammad v. Mayfield*, 933 F.3d 993, 1001 (8th Cir. 2019); *King v. Iowa Dept. of Corr.*, 598 F.3d 1015, 1054 (8th Cir. 2010). Thus, whether an inmate has properly exhausted administrative remedies will depend on the specific requirements of the prison's grievance policy.

The ADC grievance policy in effect at the time of the alleged constitutional violations was Administrative Directive 14-16. (Doc. Nos. 48-1, 48-3.) Pursuant to that Directive, the first step

is for an inmate to file an informal resolution with the designated problem solver within fifteen days of the incident. (Doc. No. 48-1 at 5-8.) The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id*. at 5-6.) Following an attempt at informal resolution, an inmate may proceed to step two by filing a formal grievance with the Health Services Administrator ("HSA") within three working days of receiving a response to the informal resolution. (*Id.* at 8-11.) The HSA must provide a written response within twenty working days of receiving the formal grievance. (*Id.* at 10.) An inmate may then proceed to step three by appealing, within five working days, to the ADC Deputy Director for Health and Correctional Programs ("ADC Deputy Director"). (*Id*. at 10-12.) "A written decision or rejection of an appeal at this level is the end of the grievance process." (*Id*. at 12.)

In this case, it is important to note that if ADC personnel are late in responding at step two or three, prisoners may proceed to the next step without a response. (*Id.* at 7, 8, 10.) And, Administrative Directive 14-16 includes the following warning:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at *all levels* of the grievance procedures *before* filing a Section 1983 lawsuit and Claims Commission claim. If this is not done, their lawsuits or claims may be dismissed immediately.

(*Id.* at 17) (emphasis added).

The parties agree TU-19-574 and TU-19-550 are the only relevant grievances Plaintiff filed about the claims he is bringing in this lawsuit. (Doc. Nos. 21, 48-3, 68, 69, 76, 77-2.) Because the procedural history of these two grievances is complicated, I will address them separately.

    A.    **TU-19-574**

On July 15, 2019, Plaintiff filed grievance TU-19-574 alleging Defendants Dr. Horan and

Captain Clark wrongfully seized his wheelchair. (Doc. Nos. 21 at 17-23, 48-1, 68, 77-4.) An acknowledgment form stated Plaintiff would receive the HSA's response on or before August 12, 2019. (Doc. No. 21 at 18.) When Plaintiff did not receive a response by that date, he appealed to the ADC Deputy Director without a ruling from the HSA. (*Id.* at 19.) Instead of waiting for the ADC Deputy Director's ruling, Plaintiff filed this lawsuit on August 14, 2019. (Doc. No. 1.) On August 16, 2019, the HSA entered a late decision concluding the grievance had no merit. (*Id.* at 20-21.) On August 26, 2019, Plaintiff appealed the HSA's merits determination to the ADC Deputy Director. (*Id.*) Thus, Plaintiff actually had two appeals of TU-19-574 pending before the ADC Deputy Director (*i.e.,* his appeal without a ruling from the HSA and his appeal of the HSA's ruling). The ADC Deputy Director rejected the appeals as being untimely filed on September 27, 2019.[3] (*Id.* at 23.)

The PLRA requires an inmate to complete the exhaustion process before filing a lawsuit in federal court. 42 U.S.C. §1997e(a). Plaintiff argues his exhaustion of TU-19-574 was timely because he completed the process before he filed his Amended Complaint on October 23, 2019. (Doc. Nos. 8, 68, 69, 87.) But, the law on this point is clear. "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in the original). Dismissal

---

[3] From my calculations, it appears the ADC Deputy Director's conclusion that the appeals were untimely filed was incorrect. The HSA's response was due on August 12, 2019. (Doc. No. 21 at 18.) When Plaintiff did not receive a response by that date, he filed an appeal that was stamped received by the ADC Deputy Director's office on August 16, 2019 - which is within five working days as required by Admin. Dir. 14-16 § IV(F)(8). (Doc. Nos. 21 at 18, 19, 22, 48-1 at 10). The HSA's decision on the merits was dated August 16, 2019, but Plaintiff wrote on that document that he did not receive it until August 26, 2019. (Doc. No. 21 at 20, 21.) He appealed it the same day, and the ADC Deputy Director's office stamped it received on August 29, 2019 - which is also within five working days as required by Admin. Dir. 14-16 § IV(G). (*Id.*; 48-1 at 11.)

6

is mandatory if "exhaustion was not completed at the time of filing." *Id.; see also Booth v. Churner,* 532 U.S. 731, 733 (2001) (the PLRA requires prisoners to complete exhaustion "before suing over prison conditions"); *Harris v. Kemna*, No. 05-2746, 2005 WL 3159569 (8th Cir. Nov. 29. 2005) (unpublished opinion) (affirming dismissal when exhaustion was not complete at the time of filing). And, the ADC's grievance policy reminds prisoners they "must fully exhaust the grievance prior to filing a lawsuit." (Doc. 48-1 at 4-5.) Because Plaintiff completed the final steps of TU-19-574 *after* he commenced this lawsuit on August 14, 2019, it cannot be considered.

    **B.**    **TU-19-550**

The procedural history of TU-19-550 is complicated. As will be discussed, Plaintiff attempted to file three appeals of this grievance to the ADC Deputy Director.

On July 1, 2019, Plaintiff filed informal resolution TU-19-550 alleging Defendant Moore refused to renew his scripts authorizing him to have a wheelchair, wedge, double mat, extra blankets, and extra toilet paper. (Doc. Nos. 21 at 7-16, 48-2, 76, 77.) The problem solver's response was due three working days later. (Doc. No. 48-1 at 6-7.) When Plaintiff did not receive her response, he filed a formal grievance on July 4, 2019. (Doc. No. 21 at 8.) On July 8, 2019, the HSA sent Plaintiff an acknowledgment form stating he would receive a response on or before August 5, 2019. (*Id*. at 10.) On August 5, 2019, Plaintiff sent an appeal ("appeal one") to the ADC Deputy Director explaining that it was 10:05 p.m., and he had not received the HSA's response as stated in the acknowledgement form. (*Id.* at 10-11.) Plaintiff wrote his appeal on the HSA's acknowledgment form, and he included a letter stating, in part: "I am sending you my Acknowledgement of grievance because I don't know what else to send you." (*Id.*) On August 13, 2019, (which was the day before Plaintiff filed this lawsuit) the ADC Deputy Director rejected appeal one because Plaintiff did not include a copy of his grievance, as required by the

7

ADC's grievance policy. (*Id*. at 14.) Specifically, Administrative Directive 14-16 § IV(G)(2) states an appeal to the ADC Deputy Director must include the original grievance *and* the acknowledgment form demonstrating when the HSA's response was due. (Doc. 48-1 at 11.) And, that section cautions: "If these two (2) pages are not submitted with the inmate's appeal portion completed, the appeal may be returned to the inmate as rejected." (*Id*.) Exhaustion under the PLRA means "using all steps that the agency holds out, and doing so properly." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012); *see also Jones*, 549 U.S. at 218 ("it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). It is undisputed that Plaintiff did not do so.

And, importantly, Plaintiff has not offered any explanation why he was unable to include a copy of his grievance with his August 5, 2019 appeal to the ADC Deputy Director. *See* 42 U.S.C. § 1997e(a) (requiring prisoners to exhaust only "available" administrative remedies); *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (administrative remedies are "unavailable" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). In fact, Plaintiff admits a copy of his grievance was returned to him on July 9, 2019, which was almost a month before he appealed to the ADC Deputy Director.[4] (Doc. Nos. 21 at 7, 85 at 3-4.) And, he filed two copies of that grievance in the record

---

[4] The informal resolution and grievance are contained on the same form. (Doc. No. 21 at 7-8.) The original form is white, which is handed to the designated problem at step one. (*Id.*) The prisoner keeps a yellow and a pink carbon copy, while a blue carbon copy goes to a grievance officer. (*Id.*) Plaintiff says that, on July 1, 2019, he sent the white copy to the designated problem solver as his informal resolution (step one). (Doc. Nos. 21 at 7, 85 at 3-5.) When he did not receive a timely response, Plaintiff sent the yellow copy to the HSA on July 4, 2019. (Doc. Nos. 21 at 8, 85 at 3-5.) On July 9, 2019, Plaintiff got the white copy back from the designated problem solver, and he signed it the same day to acknowledge its receipt. (Doc. Nos. 21 at 7, 85 at 3-5). On August 5, 2019, Plaintiff appealed to the ADC Deputy Director. (Doc. No. 21 at 10-11.) Although Plaintiff did not have his yellow copy back from the HSA at that time, he admits

long before Defendants moved for summary judgment. (Doc. No. 21 at 8, 9.) The possibility Plaintiff did not know he was required to include both forms does not excuse his failure to follow the clear rules in the ADC's grievance policy. *See Muhammad,* 933 F.3d at 1002 (a prisoner's misunderstanding of the ADC grievance procedure did not excuse his procedural default because "procedures need not be sufficiently plain as to preclude any reasonable mistake, as long as an ordinary prisoner can make sense of what it demands"); *Crowley v. Nailor*, No. 19-1293, 783 Fed. Appx. 637, 637-38 (8th Cir. Nov. 4, 2019) (unpublished opinion) (an ADC prisoner's "mistaken belief" on what form he was required to use for an appeal "did not show that the process was unavailable to him"). Thus, I conclude that, on August 13, 2019, the ADC Deputy Director properly rejected appeal one for not including the correct forms.

Plaintiff then attempted to file a second appeal of TU-19-550. Administrative Directive 14-16 § IV(G)(6) says that a "written decision *or* rejection of an appeal at this level [the ADC Deputy Director] is the *end of the grievance process.*" (Doc. No. 48-1 at 12) (emphasis added). It does not provide a mechanism for a prisoner to challenge the ADC Deputy Director's rejection of an appeal. Nevertheless, Plaintiff attempted to do so by writing on the bottom of the rejection form that he was now sending the ADC Deputy Director a copy of his original grievance and the HSA's acknowledgment form. (Doc. Nos. 21 at 14, 76-1.) On August 26, 2019, the Medical Grievance Coordinator[5] returned appeal two to Plaintiff in a letter explaining that the ADC Deputy Director's rejection of appeal one "marked the end of the appeal process for this grievance."

---

he had the white copy, and he has not explained what happened to the pink copy he should have retained for his records when he started the grievance process.

[5] Plaintiff incorrectly believes Medical Grievance Supervisor Michelle Buterbaugh and Medical Grievance Coordinator Jacqueline Buterbaugh are the same person. (Doc. No. 85.) I have already explained to him that they not. (Doc. No. 90.)

9

(Doc. Nos. 21 at 16, 77-2.) I conclude her rejection of appeal two was proper and in compliance with Administrative Directive 14-16 § IV(G)(6).

On August 13, 2019, which was the same day Plaintiff received the ADC Deputy Director's rejection of appeal one, the HSA denied Plaintiff's grievance on the merits. (Doc. Nos. 21 at 12-13, 76-1.) On August 19, 2019, Plaintiff attempted to appeal ("appeal three") the HSA's decision to the ADC Deputy Director, and it was stamped as received on August 26, 2019. On September 5, 2019, the Medical Grievance Coordinator returned appeal three to Plaintiff with a letter reminding him the ADC Deputy Director's rejection of appeal one "marked the end of the appeal process for this grievance." (Doc. Nos. 21 at 15, 77-2.)

Whether the rejection of appeal three was proper is a close issue. Administrative Directive 14-16 does not specify what happens when a prisoner receives a belated ruling from the HSA (step two) after he has already appealed to the ADC Deputy Director (step three) without the HSA's response. In such circumstances, can a prisoner file a second appeal challenging the late decision on the merits? And, more applicable to the case at hand, was the HSA's belated response on the merits a waiver of Plaintiff's procedural error in failing to send his grievance with the appeal, especially when the ADC Deputy Director's rejection and the HSA's decision on the merits were entered on the same day, August 13, 2019. *See Hammett,* 681 F.3d at 947 ("the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits"). Those issues, however, cannot be resolved in this case because Plaintiff filed appeal three on August 19, 2019, and it was rejected on September 5, 2019 – both of which occurred *after* he commenced this lawsuit on August 14, 2019. As previously explained, a prisoner must complete the exhaustion process before commencing a lawsuit. *Johnson*, 340 F.3d at 627.

For these reasons, I conclude Plaintiff did not properly exhaust his administrative remedies

in TU-19-550. Plaintiff argues administrative remedies were unavailable to him because ADC officials were late in responding at steps one and two. (Doc. Nos. 69, 87.) But, the ADC's grievance policy clearly allows a prisoner to proceed to the next step in such circumstances, and Plaintiff attempted to do so. However, he did not attach a copy of his grievance, as he was clearly required to do by the ADC's grievance policy. And, he has not offered any evidence demonstrating he was unable to do so. Plaintiff's subsequent attempts to rectify that error by filing appeal two was something that was not permitted by the ADC's grievance policy. And, his attempt to appeal the HSA's belated ruling on the merits in appeal three was too late, *i.e.,* after he commenced this lawsuit. Accordingly, I conclude Plaintiff did not properly exhaust his available administrative remedies in TU-19-550.

### C. Conclusion

Because Plaintiff did not properly exhaust his available administrative before filing this lawsuit, I recommend Defendants' Motions for Summary Judgment be granted, and Plaintiff's claims against all remaining Defendants be dismissed without prejudice.[6] *See Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

### IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

---

[6] Separate Defendants Griffin, McCoy, and Page argue they are also entitled to dismissal because Plaintiff did not specifically name them in either TU-19-550 or TU-19-574, as required by Admin. Dir. 14-16 § IV(C)(4) and (E)(2). *See Townsend*, 898 F.3d at 784 (dismissing claims against two of the three defendants who were not listed in the grievance); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (finding improper exhaustion when the "ADC was not asked to evaluate the conduct" of one defendant "or the distinct § 1983 claims first asserted" in the lawsuit). In light of my conclusion that Plaintiff did not properly exhaust his available administrative remedies in these grievances prior to filing this lawsuit, there is no need to address that argument at this time.

1.      Defendants' Motions for Summary Judgment (Doc. Nos. 47, 77) be GRANTED, Plaintiff's claims against all remaining Defendants be DISMISSED without prejudice, and this case be CLOSED.

2.      The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 2nd day of March 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE